IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. AP-75,790






EX PARTE ARTHUR LEE BURTON, Applicant









ON APPLICATION FOR A WRIT OF HABEAS CORPUS

CAUSE NO. 760321B FROM THE 338th DISTRICT COURT

OF HARRIS COUNTY




 

 Johnson, J., filed a dissenting statement.



D I S S E N T I N G S T A T E M E N T



 At the 2002 hearing, Guyton testified that "he interviewed new prison inmates to compile a
social and criminal history for classification purposes, and that the inmates were asked about their
criminal history, drug and alcohol history, religion, education, military background, and 'various
other things' to decide classification, placement, individual treatment and/or counseling . . .." State's
brief at 13-14. He later testified that "a hypothetical defendant would go to general population if
he received a life sentence for the offense of capital murder . . .." The inference, of course, is that
defendants who received a death sentence do not go into general population; they go to death row. 
Guyton also "thoroughly explained the prison classification system, including housing and contact
with others." State's Brief at 14.

 The purpose of the interview system appears to be to provide sufficient information to the
prison system to determine appropriate housing-no Crips in with Bloods, no young first timers in
with sex offenders-and appropriate treatment regimens for problems such as drug and alcohol
addiction. Housing choices dictate the level of contact with other inmates, another factor mentioned
by Guyton. 

 Given these stated purposes for the "classification interview," Guyton had no reason at all
to interview applicant. Death-row inmates are housed in cells that accommodate one person. They
have no contact with other inmates, on or off death row, except in special circumstances such as
medical visits. Rehabilitation before release is not a concern, and the prison system probably does
not use scarce rehabilitation services on condemned prisoners. A criminal history-at least as to prior
and current convictions-is readily available to the prison system through means other than self-reporting by the inmate, and such a history is likely more accurate and complete than self-reporting. 
Almost none of the information sought in such a "classification" interview is relevant when the
classification of the inmate has already been determined by his offense.

 The parties have not challenged Guyton's status as a state agent, probably because, under our
case law, he is. We do not need to re-examine that issue sua sponte. Estelle v. State, 451 U.S. 454
(1981), is on point; unwarned statements made by an inmate during a court-ordered psychological
examination were admitted at the penalty phase on the issue of future dangerousness. The United
States Supreme Court held that those statements were inadmissible. Applicant made statements
during a prison-system-ordered interrogation, and his statements were used against him during in his
second sentencing hearing on the issue of future dangerousness. Under Estelle, applicant's
statements to Guyton are inadmissible.

 Wilkerson v. State, 173 S.W.3d 521 (Tex.Crim.App 2005), does not change the equation. 
A Child Protective Services caseworker who visits an inmate in jail for the purpose of finding
suitable placements for the inmate's children is a far cry from a prison employee who wants to know
why the crime for which the inmate is serving time was committed. No one has offered a rationale
as to why such a question is appropriate or relevant to a determination of the housing and
rehabilitation of a death-row inmate.

 In these circumstances, a remand does not significantly assist this Court is resolving the
issues before it. I respectfully dissent.


Filed: June 18, 2008

Do not publish